[Clarke v. Daviney & Jack et al.]

# Clarke & Daviney *v.* Jack *et al.*

*Certiorari to Probate Judge, in matter of Contested Election.*

1. *Local legislation; constitutional provisions as to.*—An act to authorize the people of a particular county to vote on the question of removing the county-site, and to permanently locate the same according to their vote, is not a "special or local law for the benefit of individuals or a corporation," as those terms are used in the 23d section of the 4th article of the constitution; and whether the object of such a law can or can not be provided for by a general statute, within that provision of the constitution, is a question of legislative discretion, and not of judicial determination.

2. *Same.*—As to notice of the intention to apply for the passage of a local law, required by the 24th section of the 4th article of the constitution, it is not necessary for the legislative journals to show that it was given: the courts will presume that it was given, unless the journals affirmatively show the contrary.

3. *Law submitting change of county-site to vote of people.*—A special statute, authorizing the people of a particular county to vote on the question of removing the county-site, and providing that the same shall be permanently located according to their vote, is not an improper delegation of legislative powers to the people, nor violative of any constitutional provision.

4. *Contest of election.*—The act approved January 24, 1877, entitled "An act to authorize the people of Franklin county to vote on the question of removing the county-seat of said county, and to permanently locate the same" (Sess. Acts, 1876-7, pp. 185-9), makes no provision for a contest of the election to be held under it; and the provisions of the general election law, regulating contested elections (Code of 1876, §§ 302-41), being confined to the election of persons to office, are not applicable to said election; consequently, there is no statutory provision for a contest of such election.

5. *Certiorari; when writ lies to probate judge, and in whose favor.*—When an election is contested, without authority of law, before a probate judge, and is by him held void, a *certiorari* lies from the Circuit Court to remove and vacate the proceedings; and the writ may be sued out by persons who were made defendants to the proceeding before the probate judge.

APPEAL from the Circuit Court of Franklin.

Tried before the Hon. W. B. WOOD.

On the 24th January, 1877, an act of the legislature was approved by the governor, entitled "An act to authorize the people of Franklin county to vote on the question of removing the county-seat of said county, and to permanently locate the same," which contained eight sections, as follows :

"SECTION 1. *Be it enacted,*" etc., "That it shall be the duty of the sheriff of Franklin county to open an hold an election in the several election precincts of said county on the first Saturday in March, 1877, for the purpose of deciding whether the seat of justice in said county shall be removed from Russellville, its present location. The inspectors, and other officers holding and returning said election, shall be appointed

60 271 / 95 450
60 271 / 100 649
60 271 / 107 456 / 110 224
60 271 / 126 613 / 126 614
60 271 / 131 25
60 271 / 135 166 / 135 475
60 271 / 140 501

in the same manner, and by the same parties, as in the case of general elections.

"SEC. 2.  *Be it further enacted*, That said sheriff shall give at least thirty days notice of said election, by posting up two or more written notices in some public place in each election precinct in said county.  The polls at said election shall be opened by the hour of 9 A. M. at the several precincts in said county, and shall remain open till the hour of 5 o'clock P. M. All persons entitled to vote for representatives in the general assembly of Alabama shall be entitled to vote at said election.  Each voter shall write on his ticket the words 'Removal' or 'No removal.'  The said election shall be conducted under the same laws, and be governed by the same rules, except as herein directed, which govern general elections in this State.

"SEC. 3.  *Be it further enacted*, That the returning officers and inspectors of said election at the several precincts shall hold, make returns, and do all things required by the general election laws of this State; and the supervisors of the said county shall proceed, as in case of a general election, to carefully count and compare the votes as returned from the several election precincts, and, when the votes are counted and compared, the sheriff shall make publication of the vote thus ascertained; and if it shall so happen that a majority of those voting at said election shall have voted for no removal, then, in that event, the seat of justice shall be and remain permanently located at Russellville; but, if a majority of all those voting at said election shall have voted for removal, then it shall be the duty of the sheriff to hold another election, as provided for in the next section of this act.

"SEC. 4.  *Be it further enacted*, That if a majority of all those voting at the election provided for in the preceding sections of this act, shall have voted for removal, then the sheriff of said county shall open and hold another election on the second Saturday in May, 1877, for the purpose of enabling the people of said county to determine at what place they will locate the seat of justice of said county; which election shall be advertised as provided for in the preceding sections of this act, and conducted in all respects as therein directed and provided for in the first election.  And the sheriff shall specify in his advertisements what places are in nomination, which shall be : first, the centre of the county, or within three miles thereof; second, the town of Frankfort; third, the town of Russellville.  At said election, the voters in favor of locating the seat of justice at the centre of the county, or within three miles thereof, shall write on their tickets the word ' Centre '; those in favor of Frankfort shall write on their tickets the word 'Frankfort,' and those in

[Clarke v. Daviney & Jack et al.]

favor of Russellville shall write on their tickets the word 'Russellville'; and the managers of the several precincts shall send up a correct and certified statement of the votes cast at said election, together with a list of voters voting at said election, as provided for in the first election ; and the board of supervisors of said county shall, in like manner, count out and compare the votes sent up from the several precincts ; and the sheriff shall, in like manner, make publication of the result of said election.  If either of said places receive a majority of all the votes cast, such place shall be and remain the permanent location of the seat of justice of said county; and, in the event that neither place shall have received the majority of all the votes cast at said election, the place receiving the lowest vote shall be dropped, and the sheriff of said county shall proceed to hold another election ; at which election, the two places having received the highest number of votes at the preceding election shall be voted for as the seat of justice.  Said election shall be held on the first Saturday in July, 1877, and shall be held and conducted in the same manner as the preceding elections, and be governed by the same laws and regulations, so far as the same are applicable ; and the place receiving the largest number of votes shall be the permanent seat of justice for said county ; *Provided, however*, That the seat of justice shall be and remain at the town of Russellville, until suitable public buildings shall be prepared at the place to which said county-seat may be removed ; *Provided, further*, That if the town of Frankfort shall be chosen as the seat of justice of said county, then the Commissioners' Court of said county shall, at their first meeting thereafter, appoint three commissioners to inspect the court-house, jail, and other public buildings now located at said town of Frankfort, who shall report to the next term of the Commissioners' Court ; and if said commissioners report said buildings in a condition to be safely used for the purposes for which they were erected, then the records, etc., of the county shall be immediately removed from Russellville to said town of Frankfort ; but, if said commissioners report that said public buildings are not in a condition to be used for the public purposes of the county, then the Commissioners' Court, at the first meeting thereafter, shall make all orders, and take all steps necessary for repairing said buildings, which must be done as speedily as possible, and which must be paid for out of any funds in county treasury which may have been or may hereafter be levied and collected for the purpose of erecting the court-house, jail, and other necessary public buildings of said county of Franklin ; and as soon as the same are properly

(18)

repaired, the records, etc., of said county shall be removed thereto as hereinbefore provided."

The 5th section provided that, in the event the county-site should be removed to the centre, or within three miles thereof, William P. Jack and six other persons, whose names were specified, should act as commissioners to select the particular site for the erection of the court-house and jail, and make report of their action to the Commissioners' Court of the county. The 6th section provided that, in the event the county-site should be removed from Russellville, the Commissioners' Court should sell the county property there situated, and purchase the necessary land for the erection of the new buildings; and authorized them to levy a special tax for the purpose of raising the necessary funds. The 7th section imposed a penalty on any officer who might fail to perform any duties imposed on him by the act; and the 8th repealed all inconsistent laws.—Session Acts 1876-7, pp. 185-9.

An election was held under this act, on the 12th May, 1877, the result of which, as determined from the returns by the board of supervisors, on the 19th May, was as follows: "Franklin 9, votes; Russellville, 652 votes; Center, 673 votes;" and proclamation of this result was accordingly made by the sheriff. Thereupon, on the 1st June, 1877, John K. Clarke and A. W. Daviney, citizens of said county, residing in Russellville precinct, presented their petition to the probate judge of said county, seeking to contest the said election. The petition was under oath, and specified several distinct grounds of contest. It alleged that the election was void, because the provisions of the law under which it was held were not complied with, and because said law was unconstitutional and void; and also specified various irregularities in the conduct of the election, which it is not necessary to notice. The grounds on which the constitutionality of the law was attacked, as stated in the petition, were—1st, that it was a local or special law, and was therefore within the prohibition of the 23d section of the 4th article of the constitution; and, 2d, that no notice was given of the intention to apply for the passage of such a law, as required by the 24th section of said article. The petition prayed, that a day might be set for the hearing; "that proper and legal notice of this contest be given to such officers or parties as may be entitled thereto, for the time required by law, to appear and answer the same; and that all other and further proceedings be had, and orders made, as may be needful and proper in the premises."

On the filing of this petition, the probate judge appointed the 21st June, 1877, for the hearing, and ordered notice to be

given to W. P. Jack and the other commissioners named in the law; and also to the county commissioners, the sheriff, the inspectors, returning officers of the election, etc. The said W. P. Jack and others, locating commissioners under the act, appeared on the appointed day, and moved to dismiss the proceeding for want of jurisdiction; and also filed a demurrer to the petition, and a plea to the jurisdiction. Thereupon, as the judgment-entry recites, "the parties appeared by their attorneys, and, by agreement, submitted for determination by the court—1st, the constitutionality of the said act, on the grounds specified by said contestants; 2d, the defendants' motion and plea to the jurisdiction; 3d, the defendants' demurrer to the legal sufficiency of the grounds of contest specified by the contestants." The probate judge held that he had jurisdiction of the proceeding, and that the petition was sufficient; and he therefore overruled the demurrer to the petition, refused the motion to dismiss, and sustained a demurrer to the plea to the jurisdiction; and also rendered judgment declaring the law unconstitutional, and the election under it null and void.

On the 3d September, 1877, Jack and the other locating commissioners presented their petition, under oath, to the Hon. W. B. WOOD, the judge of the fourth judicial circuit, exhibiting a copy of these proceedings, alleging that they were void for want of jurisdiction, and praying that they might be removed by *certiorari* into the Circuit Court. The *certiorari* having been granted, returnable into the Circuit Court, and the return there duly filed, Clarke and Daviney there appeared by attorney, and moved to dismiss the *certiorari*—1st, "because neither of said petitioners, so far as the record shows, or their petition avers, has any individual right or interest, pecuniary or otherwise, that has been impaired or affected by said decision of said probate judge, which they now seek to have revised and annulled;" 2d, "that said petitioners have no right or interest involved in said proceeding, that is not of a public character, held by them in common with all the electors and people of said county, and are therefore precluded by law from prosecuting this proceeding in their individual names." The Circuit Court overruled the motion to dismiss, and rendered judgment quashing the proceedings had before the probate judge. In support of this judgment, the circuit judge delivered an elaborate opinion in writing, discussing every question presented by the record; holding that the probate judge had no jurisdiction of the matter of contest, and overruling all the objections urged against the constitutionality of the law.

[Clarke & Daviney v. Jack et al.]

The judgment and rulings of the Circuit Court are now assigned as error.

J. B. MOORE, with whom was W. COOPER, for appellants.—
1. The *certiorari* ought to have been dismissed, for several distinct reasons. In the first place, it was sued out by volunteers, whose private rights were in no wise invaded or affected.—*Jones v. Black*, 48 Ala. 540 ; *Ex parte Strobach*, 49 Ala. 443 ; 34 Ala. 283 ; 46 Ala. 389 ; 20 Texas, 16. In the next place, a *certiorari* should never be awarded, when the right of appeal exists.—*Wright v. Gray*, 20 Ala. 363 ; 46 Ala. 389 ; 8 Ala. 552. Again, the decision of the probate judge was rendered by consent and agreement ; is it revisable ?—20 Ala. 128 ; 5 Ala. 770 ; 32 Ala. 13 ; 50 Ala. 561. The proceedings are not final, and therefore are not revisable.—*Waters v. Coker*, 39 Ala. 730 ; 16 Ala. 828 ; 9 Porter, 274 ; 19 Ala. 198 ; 3 Ala. 323 ; 1 Root, Conn. 201 ; 4 Porter, 83 ; 1 Stewart, 183 ; 40 Cal. 479 ; 38 N. J. Law, 377 ; 43 Barbour, 232.

2. The act under which the election was held is violative of several constitutional provisions, especially the 23d and 24th sections of the 4th article. The former section declares, "No special or local law shall be enacted, for the benefit of individuals or corporations, in cases which are or can be provided for by a general law ;" and the 25th section, in connection with this prohibition, enjoins on the legislature the duty to pass "general laws under which local and private interests shall be provided for and protected." That this section is mandatory and imperative, see Cooley's Const. Lim. 79. This law is a local law ; it is for the benefit of a corporation ; and its object might have been attained by the passage of a general law. That a county is a corporation, see Code of 1876, § 815 ; *Lowndes County v. Hunter*, 49 Ala. 507 ; 48 Ala. 449 ; 45 Ala. 176 ; 41 Ala. 114. That a general law can be enacted, on the subject of removing and locating county-sites, is shown by the fact that such a general law does exist in Nevada, Indiana, California, and Texas.—6 Nevada, 104 ; 6 U. S. Digest, N. S., 195, §§ 1–3 ; 14 *Ib.* 141, §§ 7–8. Such a law was held unconstitutional in Indiana, under a state of facts almost identical with this case.—*Thomas v. Commissioners*, 5 Indiana, 4. Again, the probate judge found, as a fact, that no notice was given of the intention to apply for the passage of this law ; and this failure renders the election null and void.—*People v. Hamilton County*, 3 Nebraska, 244.

WALKER & SHELBY, *contra.*—1. The proceedings before the probate judge were void for want of jurisdiction. The law

under which the election was held makes no provision for a contest, and the general law regulating contested elections does not apply to such an election, being confined by its terms to the election of persons to office.—*Sullivan v. Robinson*, 39 Ala. 614; *Logwood v. Bank*, Minor, 23; 18 Geo. 340; 1 Blatchf. 556. The decree is void, also, because it declares a statute unconstitutional at the suit of mere volunteers, who do not show any invasion of their rights.—*Jones v. Black*, 48 Ala. 542; Cooley's Const. Lim. 163–4, and cases there cited.

2. The proceedings being void, *certiorari* was the proper remedy to remove them to the Circuit Court, a court of general jurisdiction; and being certified to that court, they might be quashed on motion, or declared null and void on assignment of errors.—*Sullivan v. Robinson*, 39 Ala. 615; *Thomas v. Adams*, 2 Porter, 188; *Fitch v. Conner*, 22 Wendell, 132. That the decree is void, is not a sufficient reason for refusing to quash it : it is a decree to which the petitioners were made defendants, and they have a right to have it vacated.—3 U. S. Digest, 1st series, 248, and fifteen cases there cited. The petitioners were made defendants to the contest, and it can not now be urged that they were not parties, or were improperly made parties.—Herman on Estoppel, 336, § 322; 8 Abbott's N. Y. Digest, 255; 30 N. Y. 226; *Brown v. Chappell*, 12 Wallace, 681; 2 John. Ch. 242; 5 John. Ch. 191; *Taylor v. Longworth*, 14 Peters, 174. As to the finality of the decree, see Freeman on Judgment, § 16; *Belt v. Davis*, 1 Cal. 138; 2 Peters, 449; 7 Bush, Ky. 623; *Elliott v. Mayfield*, 3 Ala. 226.

3. These principles are decisive of the case, without passing on the constitutionality of the law under which the controversy arose; and this being so, the court will not decide that question.—Cooley's Const. Lim. 163, and cases there cited. But the validity of the law can not be successfully controverted. It is not a special law "for the benefit of individuals or corporations," as those words are used in the 23d section of the 4th article of the constitution; which apply only to private corporations, and are intended to prohibit the passage of any law granting to such corporations, or to individuals, any peculiar, exclusive privileges or immunities. A county is a public corporation, to which is intrusted a part of the governmental power, and of which the courts take judicial notice. Whether the object of the law, if it should be held to fall within the prohibited class, could be as effectually secured by a general law, is not a question for judicial decision, but was addressed to the legislative discretion and determination. The case of *Thomas v. Commissioners*, 5 Indiana, cited to this point by appellants, has been overruled,

in effect, by a subsequent decision of the same court, and has been expressly repudiated in Missouri.—*State v. County Court of Boone*, 50 Mo. 317, or 11 Amer. Rep. 415; 7 Indiana, 328. If this position be correct, no preliminary notice of the intended law was required; and if such notice was necessary, the court will presume that it was given, rather than presume that the legislature failed to perform its dty.

STONE, J.—We are asked to pronounce unconstitutional the act "To authorize the people of Franklin county to vote on the question of removing the county-seat of said county, and to permanently locate the same," approved January 24, 1877.—Pamph. Acts, 185. The particular grounds urged in favor of such ruling are—first, that the statute violates section 23 of article IV of the constitution, which ordains, "No special or local law shall be enacted, for the benefit of individuals or corporations, in cases which are or can be provided for by a general law, or where the relief sought can be given by any court of this State."

We do not consider this a *special* or *local* law, for the benefit of an *individual* or *corporation*, in the sense in which the latter term is employed in the constitution. It affects the whole county, and relates to its political organization.—*Eitel v. State*, 33 Ind. 201; *Askew v. Hale County*, December term, 1875; *Chambers v. Lee County*, December term, 1876. But we think this question is necessarily one of legislative discretion, and, on questions such as this, not one of judicial determination. Many facts and considerations may enter into the inquiry whether the particular want or object "can be provided for by a general law." A strong local want or desire may exist, clamoring for an enactment, which the legislature could make general, but which the general public, not only do not desire to have operative upon them, but would stoutly resist, if proposed. To hold that the question whether the object of a proposed local or special statute can be provided for by a general law, is, at all times, one of judicial inquiry, would lead to most deplorable doubt and uncertainty, alike in the enactment and administration of the law. There is scarcely a conceivable subject of local or special grievance, for the redress of which an ingenious advocate or disputant could not find or frame a general enactment.

2. In the second place, it is urged against the constitutionality of this enactment, that notice of the intention to apply therefor was not published in the locality where the matter or things to be affected were situated, for twenty days prior to the introduction of the bill in the general assembly. As we understand this objection, it is not founded

on any allegation that the journal shows affirmatively such notice was not given. It rests on its failure to affirm that the notice was given. In *Harrison v. Gordy*, at the last term, we decided this identical question, adversely to the argument here made. We then said, "We think it is our duty to indulge the intendment, that the legislature conformed to every constitutional requirement, which the journal of its proceedings does not affirmatively show was disregarded." See Cooley's Const. Lim. 139. This would be decisive of the question we are considering, even if it were presented in the present cause. But, under the rule declared above, this is not a local or special law which requires publication to justify its enactment.—See, also, Cooley's Const. Lim. 128; *Marks v. Trustees*, 37 Ind. 163; *State v. County of Boone*, 50 Mo. 317; *State v. McCann*, 21 Ohio St. 211.

3. A third objection to the enactment is, that the legislature did not finish its work, but referred certain questions to a vote of the people. Nothing which pertained to the enactment of the law was referred to the people of the county. The law was complete in all its parts, before any vote was taken. There was no election ordered, or held, to determine whether the action of the legislature should become a law. The question was, whether the legal voters of Franklin county elected to have a change of the site of their courthouse. There is nothing in this objection.—Cooley's Const. Lim. 119, note 4, and numerous authorities.

4. Clark and Daviney, appellants, filed their petition to the probate judge of Franklin county, seeking to contest the election, on several grounds therein set forth. Had the probate judge authority and jurisdiction to hear and determine the questions raised by the petition? In *Echols v. State, ex rel.*, at December term, 1876, we, on satisfactory reasoning and authorities, determined that the right to contest an election is purely statutory; and that when the statute does not confer the right, it does not exist. We declared, however, that there were common-law modes of determining contested elections; and when the statutes did not inhibit a resort to such common-law modes, they might be appealed to, in cases for which no statutory contest was provided. Is there any statute which authorizes the present contest? There is nothing in the act of January 24, 1877, under which this election was held, which makes express provision for such a contest.

It is contended, however, that certain clauses of this statute bring this election within the influence of the general election law; and inasmuch as the general election law provides a mode of contesting elections held under it, this elec-

tion may be contested under those provisions. The clauses relied on are as follows: "All persons entitled to vote for representatives in the general assembly of Alabama, shall be entitled to vote at said election." . . "The said election shall be conducted under the same laws, and be governed by the same rules, except as herein directed, which govern general elections in this State." "That the returning officers, and inspectors of said election at the several precincts, shall hold, make returns, and do all things required by the general election laws of this State; and the supervisors of the said county shall proceed, as in case of a general election, to carefully count and compare the votes as returned from the several election precincts; and, when the votes are counted and compared, the sheriff shall make publication of the vote thus ascertained."

The provisions of the general election law which relate to contested elections, are embraced in the six articles of chapter 4, title 6, part 1, from section 302 to section 341, Code of 1876. It will be seen that they relate only to "the election of persons declared elected to any office," &c. Section 325 directs, that "a copy of such statement, with the day of trial indorsed thereon, must be served on the person whose election is contested, or left at his usual place of residence," &c. Not one word in the whole chapter which relates to any elections, save those of persons to office. We hold, that there is no law providing for a contest of an election such as this, and the probate judge of Franklin county had no jurisdiction whatever of the cause.

5. A contest of an election is, in its nature, judicial. When an inferior court or tribunal assumes jurisdiction of a subject-matter, and pronounces judgment, in a matter over which it has no jurisdiction, and the law provides no appeal from such judgment, the common-law writ of *certiorari* is the appropriate remedy, to correct his errors, and vacate and quash the proceedings. The statute provides no appeal from a judgment, such as the judge of probate rendered in this cause, and *certiorari* was the proper remedy.—1 Brick. Dig. 333, §§ 2, 4, 5. The proceedings in the Probate Court were prosecuted, on a notice to, and defense by the persons who sued out the *certiorari* in this cause; they were commissioners and officers charged with important duties in reference to the new county-site, should one be elected; and we hold that appellants can not be heard to controvert their right to sue out *certiorari* from the Circuit Court. To hold otherwise, would be to declare that, although a serious judicial error was committed by the judge of probate, yet no one

has such special interest in the subject-matter, as that he can move to have the error corrected.

We have been much aided by the able argument and opinion of the circuit judge in this cause, and, on all the questions considered by us, we have adopted his conclusions.

There is no error in the record, and the judgment of the Circuit Court is affirmed.