# Adair Bros. & Co. v. Gilmore.

*Bill in Equity for a Discovery and an Accounting.*

1. *Attachment for contempt; when inability to obey order of court a valid excuse.*—Where on a bill filed for a discovery and an accounting, it is shown that there was a breach of trust, and a decree is rendered ordering the payment by defendant of the money collected by him to the register within a certain time, and upon proceedings for contempt in failing to turn over the money and effects in compliance with such order and decree of the court, if it is shown that the defendant was unable to comply with the order by reason of his insolvency, but there was no evidence that he intentionally put himself in such condition after the rendition of the order or in anticipation thereof for the purpose of defeating the mandate, and there is no evidence of a willful refusal to pay, or of a fraudulent withholding of the money, the case is not one which would justify an attachment for contempt, such inability to obey constituting a valid excuse for non-performance; and in such case the rule *nisi*, to show cause why respondent should not be held for contempt, is properly discharged.

APPEAL from the Chancery Court of Cullman.

Heard before the Hon. THOMAS COBBS.

The facts of the case are sufficiently stated in the opinion.

GEORGE H. PARKER and ALEX. T. LONDON, for appellant.—1. The chancery court has the unquestioned power and authority to enforce its decrees by attachment.— Code, §§ 722, 3598, 3601 ; 2 Daniel Chan. Pl. & Prac., 1032, 1046 ; 3 Amer. & Eng. Encyc. of Law, 791 ; *Ex parte John Hardy*, 68 Ala. 306. 2. The defendant has not purged himself of the contempt by saying that he is now unable to perform the

[Adair Bros. & Co. v. Gilmore.]

decree, because he did not have the money, and did not have it at the time of the service of the decree upon him. He has not shown "that his disobedience was not willful, but the result of his inability, not produced by his own fault or contumacy."—*Ex parte Hardy*, 68 Ala. 326; *O'Callaghan v. O'Callaghan*, 69 Ill. 552; *Galland v. Galland*, 44 Cal. 475, 13 Amer. Rep. 167.

O. KYLE, *contra.*—1. There are two kinds of contempt, direct and constructive; direct contempt is committed in the presence of the court while sitting judicially; constructive contempt is that which tends to obstruct and embarrass the court, though not committed in the court's presence.—*People v. Wilson*, 64 Ill. 196, 16 Amer. Rep. 528; *State v. Frew*, 24 W. Va. 416, 49 Amer. Rep. 257; *Ex parte Robertson*, 11 Amer. St. Rep. 207. The contempt charged in the case at bar, is what is known as a civil contempt.—*In re Wilson*, 75 Cal. 580.

2. If at the time the decree was rendered, or subsequent thereto, the defendant has been unable to obey the decree, and he did not voluntarily put himself in this condition, in order to avoid obeying the decree, under all the authorities he is not guilty of contempt, if he does not obey it.—*Galland v. Galland*, 44 Cal. 475, 13 Amer. Rep. 167; *Ex parte Hardy*, 68 Ala. 326; *Ex parte Cohen*, 6 Cal. 318; *Carlton v. Carlton*, 44 Ga. 216; *Smith v. McLendon*, 59 Ga. 523; *Wightman v. Wightman*, 45 Ill. 167; *Adams v. Haskell*, 65 Amer. Dec. 517; *O'Callaghan v. O'Callaghan*, 69 Ill. 552; *Myers v. Trimble*, 3 E. D. Smith 612; *Smith v. Smith*, 92 N. C. 304; *Wartman v. Wartman*, Taney C. C. 362; *Ex parte Robertson*, 11 Amer. St. Rep. 207; *Fischer v. Langbein*, 103 N. Y. 84; Repalje on Contempts, §137; 5 Crim. Law Mag. 520.

COLEMAN, J.—The appeal is prosecuted from an order of the court, refusing to commit the appellee for a contempt upon the petition of Adair Bros. & Co.

D. M. Gilmore became indebted to appellants for the purchase of fertilizers, and to secure the payment, under an agreement to that effect, delivered to them certain notes as collateral. By the terms of the agreement the title and ownership of the collateral notes became vested in Adair Bros. & Co. These collateral notes were subse-

quently sent to Gilmore for collection, who received them as shown by his receipt as their agent. The debt of Gilmore not being paid at maturity, the appellants sued and recovered judgment in the circuit court of Cullman county against Gilmore, at the spring term, 1888, for six hundred and ninety-five and 11-100 dollars. After execution and return of no property found, the appellants filed their bill in the chancery court, in which complainants averred their ownership of the collateral notes, their delivery to Gilmore as their agent, the collection of large sums of money by him, a demand for the money, and the return of the uncollected notes, and his refusal. The bill prayed for a discovery and an accounting.

The record before us does not contain the answer of the respondent. At Chambers, on the 21st of November, 1891, the chancery court decreed that complainants were entitled to relief, and referred the cause to the register to state an account and ascertain and report to the next term the amounts collected, and what disposition had been made of the collateral notes. The register reported that there was due complainants on their judgment nine hundred and twelve 90-100 dollars, and that there was a balance of fifteen hundred and seventy-five dollars collected from the collateral notes which respondent "has retained, used and spent for his own benefit," and that there remained in notes uncollected "one hundred and two 54-100 dollars which were in the hands of one J. W. Austin, Esq." The report of the register was in all things confirmed, and by final decree on the report of the register, among other things, the decree declares that, "it further appearing to the satisfaction of this court that the defendant has collected and received into his possession from the collateral notes * * * * which were the property of complainants fifteen hundred and seventy-five dollars, over and above the amount turned over by him to complainants, it is therefore ordered, adjudged and decreed that the defendant shall pay, turn over and deliver to complainants, or their solicitors of record, within sixty days from the service of the copy of this decree on defendant, the said amount of complainant's property, or so much thereof as will be sufficient to satisfy said amount due by the defendant to the complainants. It is further ordered, adjudged and decreed that the uncollected notes, as shown by the reg-

ister's report and exhibit C. thereto, be turned over and delivered by the defendant to the register of this court within sixty days from the adjournment of this court," &c.

The decree as to the payment of the money within sixty days not having been performed, the register, upon the application and affidavit of complainants, cited the respondent to appear at the next term of the chancery court, "to show cause why he should not be attached for contempt in so failing to comply with said decree." The respondent made return to the rule *nisi*, and at the hearing the court discharged the rule *nisi*, and dismissed the contempt proceedings, and from this order the present appeal is prosecuted.

The answer by respondent to the rule is not controverted. The answer shows that as to the uncollected notes, the decree of the court was performed. That as to the money collected, it was used in the payment of attorney's fees, court costs, debts and expenses of living and that this occurred before the filing of complainants' bill, and that respondent has no means, visible or invisible, and did not have at the time of the rendition of the decree, nor at any time since, with which to pay said debt or to perform said decree; that he failed to comply with the decree wholly because of his poverty and insolvency, and not from willfulness or contumacy. There is no evidence in the record which conflicts with this statement of the facts.

The original bill did not aver that the respondent had in possession or under his control either the money collected or the collateral notes, and considering the decree of the chancery court as "granting the relief prayed for" and in confirmation of the report of the register, we do not construe it as having ascertained and decreed that the respondent then had in possession or under his control the money collected from the collateral notes or any money, and which he was ordered and adjudged to pay over, nor a decree ascertaining that the respondent had property or effects, liable to the satisfaction of complainant's debt; which he was ordered and required to turn over or surrender. The decree of reference and report of the register and decree show a breach of trust, but not a fraudulent conversion of the money. The case does not require the consideration and determination of

the question as to whether a chancery court has authority to compel the performance, by imprisonment, of a decree rendered against an agent upon an accounting under any circumstances; but we think it clear that when there is no evidence of a willful refusal to pay or of fraudulent withholding of money, and the uncontroverted facts show an inability to perform, and there is no evidence that the party intentionally put himself in that condition, after the rendition of the order, or in anticipation thereof, for the purpose of defeating the mandate, the case is not one which would justify an attachment for contempt. The foundation for the process of attachment for failing or refusing to obey an order or decree of court is the ability to perform, unless the party has brought about his inability intentionally to avoid the performance of the obligation. The principles of law discussed and declared in the opinion of the court, and in the dissenting opinion in the case of *Ex parte Hardy*, 68 Ala. 305, are entirely consistent with our conclusion in the case at bar, and both show that the decree of the court, discharging the rule, was free from error.

Affirmed.