[Ex parte Dickens.]

# Ex parte Dickens.

## Petition for Certiorari.

(Decided May 11, 1909. Rehearing denied June 30, 1909.
50 South. 218.)

1. *Courts; Supreme Court; Jurisdiction.*—The Supreme Court under the common law is invested with power to review orders, proceedings and judgments of inferior courts and tribunals, and to pass upon the question of their jurisdiction and decision on questions of law.

2. *Certiorari; Scope of Writ.*—In the absence of a statute, the Supreme Court is without jurisdiction to review by certiorari judgments of inferior tribunals on questions of fact.

. 3. *Same; Law Questions.*—Originally, certiorari was only available to review questions of jurisdiction, but it may be now used to determine legal questions affecting the merits of the cause.

4. *Same; Right to Writ.*—Where the party seeking certiorari has an adequate remedy by appeal, he is not entitled to writ of certiorari.

5. *Same; Scope of Review.*—Where a writ of certiorari is granted the trial is not thereby rendered de novo.

6. *Mandamus; Nature of Writ.*—The office of a writ of mandamus is to require a court or a judge to act, and is not to correct error or to reverse judicial action although it may be issued to enforce a clear right.

7. *Constitutional Law; Imprisonment for Debt.*—An order committing a party to imprisonment as for a contempt until he should pay an amount equal to the value of certain coupons detached from certain bonds and disposed of is violative of the constitutional provision against imprisonment for debt.

8. *Contempt; Civil Contempt.*—A civil contempt consists in a failure to do something ordered by the court for the benefit of the opposing party.

9. *Same; Appeal; Nature of Proceeding.*—A proceeding for contempt is not a part of the main case, but is a complete collateral proceeding, which cannot be reviewed on appeal in the main case.

10. *Same; Habeas Corpus; Review.*—An order committing a party for contempt is reversible on certiorari for errors on the face of the record; or if the party has been illegally imprisoned, by habeas corpus, but the party has no remedy by appeal.

11. *Same; Power to Punish.*—All courts have inherent power to punish for contempt, which power is based on their right to protect their dignity and demand obedience to their decrees whether the contempt be civil or criminal.

12. *Same; Orders in Chancery; Disobedience.*—An order adjudging a party in contempt for failing to deliver certain bonds to a receiver,

[Ex parte Dickens.]

which order had become functus officio by having been complied with as well as having been reversed on appeal will not sustain contempt proceedings.

13. *Same; Authority of Court.*—Where a receiver had been appointed to take charge of the assets of a firm whose estate was being administered by the court, the court had jurisdiction to make such orders and adopt such measures as were necessary to have the firm's property placed in the hands of a receiver.

14. *Same; Punishment; Imprisonment.*—Where a party had violated an order of the chancery court requiring him as a surviving partner of a firm to account for and deliver the assets in his hands to a receiver, the court had jurisdiction to commit him to prison until the order was complied with either by him or until the purpose of the order had been accomplished by other means.

15. *Same; Statutes.*—Section 3057, Code 1907, does not apply to civil contempt consisting of a refusal or failure to obey the orders of a chancery court.

Original petition in Supreme Court.

Charles C. Dickens was imprisoned as for a contempt for a failure to comply with certain decrees of the Mobile Chancery Court, and petitions for certiorari to review the proceedings leading up to his imprisonment. Granted in part and petitioner discharged.

STEVENS & LYONS, FRANCIS J. INGE, WEBB & MCALPINE, and B. B. BOONE, for petitioner. Certiorari is the proper remedy in this case.—*McAllilley v. Horton,* 75 Ala. 492; *Camden v. Bloch,* 65 Ala. 239; *A. G. S. v. Christian,* 82 Ala. 309; *Stanfield v. Dallas County,* 80 Ala. 290; *Pub. Co. v. Press Assn.,* 102 Ala. 483; *Beech v. Lavender,* 138 Ala. 410; *Ex parte Nat. L. Mfg. Co.,* 41 South. 10; *Benton v. Taylor,* 46 Ala. 388; *Ex parte Buckley,* 53 Ala. 42. No appeal lies from an adjudication of contempt.—*Eastern v. The State,* 39 Ala. 554. This is true in cases of civil contempt.—*Brady v. Brady,* 144 Ala. 414. See in this connection *Ex parte Boscowitz,* 84 Ala. 463; *Ex parte Dement,* 53 Ala. 389. The suposed order of May 2, 1908, is not a decree ordering anything to be done.—*Parks v. Lyde,* 90 Ala. 246; *Pickering v. Townsend,* 118 Ala. 351; *Ala. Nat. Bank v.*

*Hunt,* 125 Ala. 512; *Jasper Merc. Co. v. O'Rear,* 112 Ala. 247; *Dell v. Otts,* 101 Ala. 188. The supposed order refrains from reciting any time as to a compliance with it, and cannot be made the basis of contempt proceedings.—Sec. 3214, Code 1907. The proof all shows that there was not time within which to comply with the order, and inability to perform is a perfect answer.—*Adams v. Gilmore,* 106 Ala. 440; *McKissack v. Voorhees,* 119 Ala. 105. The decree of October 31, 1908, filed November 4, 1908, is incapable of supporting the motion for contempt. The grounds of the motion which allege that the account filed by respondent was fraudulent, is impossible and absolutely unknown to chancery or any other practice.—*Hovey v. Elliott,* 167 U. S. p. 442. The logical result of complainants insistence upon the separation of the account is a waiver of the contempt now charged.—1 Daniels P. & P. 503. The order committing for a failure to account for the proceeds of the detached coupons was clearly violative of the Constitution 1901; *Hovey v. Elliott, supra.*

GREGORY L. & H. T. SMITH, for appellee.—The decree of the court committing the petitioner for contempt, and that ordering a reference to the master is not reviewable upon this proceedings, and the question does not now arise whether Mr. Dickens was entitled to a hearing upon the reference or not. This action is civil in its nature and governed by section 3213, Code 1907. The distinction between two characters of proceedings is clearly defined in the following cases:—*Bessette v. W. B. Conkey Co.,* 194 U. S. 328. The questions attempted to be presented cannot be reviewed upon this appeal.— *Independent Pub. Co. v. Am. P. Assn.,* 102 Ala. 483; *Baldwell v. Myers,* 8 Conn. 496; 72 Ind. 250; 38 Conn. 121; 45 Conn. 544; 47 Conn. 173; 104 Ky. 149; 62 N.

J. E. 737; 12 Nev. 331; 6 Bax. 1331; 61 Minn. 120.  Under these authorities, the right of appeal lies from a civil contempt.—*Snow v. Snow,* 43 Pac. 622.  The order of reference is not now reviewable.—*Jackson County v. Gullatt,* 84 Ala. 248; *Beal v. Lehman-Durr Co.,* 128 Ala. 166; 6 Cyc. 759.  It was not necessary that the original motion should specify in detail the several particulars in which the accounts were fraudulent.—*Coleman v. Roberts,* 113 Ala. 332; *Eastern v. The State,* 39 Ala. 551; *Leech, et al. v. Bush,* 57 Ala. 154.  It is contempt to willfully destroy, remove, conceal or dispose of the subject-matter of the litigation pending the proceeding.—9 Cyc. 8.  The complainant has not been denied the right to be heard according to due process of law, but is in default in the matter of refusing to proceed according to the established practice, and has no right to be heard in defiance thereof.—*Mussina v. Bartlett,* 8 Port. 277; *Levert v. Redwood,* 9 Port. 93; *Thornton v. Neale,* 49 Ala. 592; *Madden v. Floyd,* 69 Ala. 224; 9 Cyc. 55, 56; *Vincent v. Daniels,* 59 Ala. 602. The proceedings complained of are ex parte in their nature.—Authorities supra.  A party who does not file his pleadings in the time prescribed by law cannot claim that he has a right to file them at a later day.—*Hightower v. Ogletree,* 114 Ala. 94; *Steele v. Tutwiler,* 57 Ala. 113.  The action of Dickens in filing a fraudulent account constitutes a flagrant contempt of court.—Section 2686, Code 1907; see also, secs. 3213, 4630, Code 1907; *French v. Vining,* 102 Mass. 133; *In re Post,* 45 Hun. 635; *In re Rosenburg,* 9 Wis. 581; *Matter of Heuser,* 87 Wall. 262; *Matter of Hart,* 6 Wall. 516; *Vincent & Daniels, supra;* 20 A. & E. Ency. P. & P. pl. et seq., and authorities therein cited.  Such proceedings were in due course of law.—*Alexander v. Steele,* 84 Ala. 334; *Cowart v. Harold,* 12 Ala. 265;

*Robinson v. Allison,* 86 Ala. 529; *Fountain v. Ware,* 56 Ala. 560.

SIMPSON, J.—This is a proceeding by certiorari, from this court, seeking to have set aside certain orders of the chancery court under which the petitioner is imprisoned for contempt of court.

The first question which arises is whether or not the petitioner can have relief by this proceeding. "By the common law the power is vested in the Supreme Court to review the orders, proceedings, and judgments of all inferior courts and tribunals, and pass upon the question of their jurisdiction and decisions on questions of law; but, in the absence of some statute conferring the power of reviewing the determinations of these inferior tribunals upon questions of fact, the action of the court or tribunal is final and conclusive and cannot be reviewed, revised, or corrected on the common-law writ of certiorari."—Harris on Certiorari, p. 40, § 45. Originally, on certiorari, only the question of jurisdiction was inquired into; but this limit has been removed, and now the court "examines the law questions involved in the case which may affect its merits."—Id., p. 3, § 1. As a general proposition certiorari will not be granted in cases where the party seeking it has an adequate remedy by appeal.—Harris on Certiorari, p. 37, § 44; *A. G. S. R. R. Co. v. Christian,* 82 Ala. 307, 309, 1 South. 121.

So it becomes necessary to decide whether the petitioner in this case has an adequate remedy by appeal. "A 'civil contempt' consists in failing to do something ordered to be done by a court in a civil action, for the benefit of the opposing party therein."—9 Cyc. 6. While there have been some opinions to the contrary, the

[Ex parte Dickens.]

weight of authority, as well as the reason of the case,
is that a proceeding for contempt is not a part of the
main case, before the court, but is collateral to it. a
proceeding in itself, and consequently would not come
up for consideration on an appeal in the main case.—
9 Cyc. 33; *Hogan v. Alston,* 9 Ala. 627.

If it were a new proposition, the writer might be dis-
posed to think that, as it is a collateral independent
proceeding, a final order of commitment would be a
final decree, in that case, from which an appeal might
be taken; but, as the matter has been before our own
court several times, we may refer to our own cases to
determine this question.

In the case of *Hogan v. Alston, supra,* this court said
that a rule for an attachment against a party or witness
"must, in general, be corrected by a mandamus, or oth-
er appropriate remedy."

Where a party appealed from a judgment fining him
for contempt, the court declared the appellant was with-
out remedy, and stated that: "If the judgment entry
showed error on its face, possibly it would furnish
ground for a certiorari; or, if the party has been ille-
gally imprisoned, for a habeas corpus, it furnishes no
ground for appeal."—*Easton v. State,* 39 Ala. 551, 554,
87 Am. Dec. 49. In that case the record did not show
what the facts were, upon which the contempt was ad-
judged, and the quotation made from Judge Ruffin
seems to indicate that if the facts were stated, and were
insufficient to justify the adjudication of contempt, the
party should be discharged.

In a case where a physician refused to testify as an
expert, without being paid for his services, and was fin-
ed for contempt, the case was brought to this court by
certiorari, and the judgment of the circuit court was
affirmed.—*Ex parte Dement,* 53 Ala. 389, 25 Am. Rep.
611.

[Ex parte Dickens.]

Again, where a witness refused to answer a question which might tend to criminate him, and was adjudged guilty of contempt, the case was brought up to this court by certiorari, and the order of the lower court quashed, and the petitioner discharged.—*Ex parte Boscowitz*, 84 Ala. 463, 4 South. 279, 5 Am. St. Rep. 384.

In the *Hardy Case,* where Hardy was imprisoned by order of the chancery court for refusing to obey the order of the court requiring him to deliver up bonds for the payment of a debt (under a section of the Code of 1876), the matter was brought to this court by a petition for a writ of habeas corpus, and the order of this court was that "the writ of habeas corpus and certiorari will be awarded," etc.—*Ex parte John Hardy,* 68 Ala 303, 323.

An order granting a rule nisi to show cause why the respondent should not be adjudged guilty of contempt was held not to be such a final decree as will authorize an appeal.—*McKissack v. Voorheis, Miller & Co.,* 119 Ala. 101, 104, 24 South. 523.

The case of *Brady v. Brady,* 144 Ala. 414, 39 South. 237, seems to be based mainly on the fact that the decree confirming the report of the register, and ordering the defendant to pay the alimony awarded or go to jail, was not such a final decree as would support an appeal, and in that case, on account of the fact that the final decree could not place the parties in statu quo, a rule nisi was granted to show cause why a peremptory mandamus should not be granted to vacate the decree.

On the other hand, this court has entertained an appeal from an order of court refusing to commit for contempt.—*Adair Bros. & Co. v. Gilmore,* 106 Ala. 436, 17 South. 544. The proceedings of lower courts have also been reviewed and corrected by certiorari in the following cases, to-wit: Where a claim against an insolv-

[Ex parte Dickens.]

ent estate was rejected.—*Cawthorne v. Weisinger,* 6 Ala. 714, 717. Also where one not a party to the proceeding was injured by it.—*Earle v. Juzan,* 7 Ala. 474. Also on dismissal of petition, by administrator of a distributee, to represent his intestate in the settlement.— *Graham et al. v. Abercrombie et al.,* 8 Ala. 552. Also where a void order of removal of an administrator had been entered.—*Ex parte Boynton,* 44 Ala. 261. Also where a justice of the peace rendered judgment against a corporation, by default, without showing that proof was made of the official character of the person on whom service was had, because an appeal would not be an adequate remedy.—*M. & C. R. R. Co. v. Brannum,* 96 Ala. 461, 11 South. 468; *Independent Pub. Co. v. Am. Press Ass'n.,* 102 Ala. 475, 15 South. 947. Also to quash a summary execution issued on a bond illegally returned as forfeited.—*Cobb v. Thompson,* 87 Ala. 381, 384, 6 South. 373. Also on contest of election, without authority of law, in probate court.—*Clarke & Daviney v. Jack et al.,* 60 Ala. 271. Also in a stock law case; no appeal being provided by statute.—*Stanfill v. Court of Co. Rev.,* 80 Ala. 287; *Com'rs' Court v. Johnson,* 145 Ala. 553, 39 South. 910. Also for defects on face of proceedings in probate court for erecting a dam.—*McCulley v. Cunningham,* 96 Ala. 583, 11 South. 694; *In re Chetwood,* 165 U. S. 462, 17 Sup. Ct. 385, 41 L. Ed. 782; *Bessette v. Conkey,* 194 U. S. 335, 24 Sup. Ct. 665, 48 L. Ed. 997.

From these, and other cases which might be cited, the judgment of this court is that the proper way to review the action of the court in cases of this kind is by certiorari, and not by appeal.

We think that certiorari is a better remedy than mandamus, because the office of a "mandamus" is to require the lower court or judge to act, and not "to cor-

rect error or to reverse judicial action," though it may be issued to enforce a "clear right" (5 Mayfield's Dig. 628; 9 Cyc. 65) ; whereas, in a proceeding by certiorari, errors of law in the judicial action of the lower court may be inquired into and corrected.

As stated by this court, under this writ "the jurisdiction of the court and the regularity of its proceedings—that is, errors of law apparent on the record—are available; but the trial is not de novo, and conclusions of fact cannot be reviewed."—*McCulley v. Cunningham,* 96 Ala. 583, 585, 11 South. 694, 695; *Clarke & Daviney v. Jack et al.,* 60 Ala. 271, 280; *A. G. S. R. R. Co. v. Christian,* 82 Ala. 309, 1 South. 121; Harris on Certiorari, p. 65, § 83.

All courts have the inherent power to punish for contempt of court, and, although contempts are divided into criminal and civil contempts, yet the power of the court, in each, rests upon its right to protect its dignity and to demand obedience to its decrees..

The decree which is referred to as the decree of May 2, 1908, after stating the motion on which it is made, goes on in these words: "Upon consideration, I am of opinion that it is the duty of said surviving partner, so far as it is possible, to file such account as is required by this motion, and to do so at the earliest possible moment. The court does not, in this order, fix a time within which this must be done, further than to request that it be done. within a reasonable time, as there is not sufficient data before the court to determine what would be a reasonable time within which this account could and should be prepared." On the same day (May 2d) a motion was filed by the complainant asking that an order or reference be made to a special master to state the accounts, in about the same manner as indicated for the respondent to state it. On May 9th this

[Ex parte Dickens.]

motion was granted, in so far as the first 10 grounds are concerned; but as to the last paragraph of said motion asking that said special master state an account between Charles Dickens as surviving partner, and complainant, and ascertain what moneys have come into his hands as surviving partner, how he has invested the same, and what credits he is entitled to for expenses in winding up the partnership, the chancellor says it should not be granted, until the issues presented by the plea and cross-bill have been determined, also that it would require an accountant of more than ordinary ability. So the motion, on this point, is reserved for further hearing.

On November 4, 1908, on motion, an order was entered directing the defendant to forthwith file his accounts and vouchers, showing his receipts and disbursements since the last account filed by him, both as surviving partner and as administrator. After motion made for commitment for contempt, a great volume of testimony was taken, showing that experts had had access to all of the books and papers of the business, and an exhaustive analysis of the accounts and dealings was made. On January 28, 1909, a decree was rendered, stating: That, in the opinion of the chancellor, said Charles C. Dickens had not, in good faith, carried out the orders of the court of May 2 and November 4, 1908; that the accounts which had been filed by him, both as administrator and as surviving partner, were fraudulent; that he had not made an honest effort to comply with the decree of February 15, 1908, requiring him to file, before February 24th, a true and correct account, etc. It was therefore adjudged that he had been guilty of contempt, in failing to comply with said several orders, and in filing fraudulent accounts, also, that he be allowed 30 days to comply with the order of May 2d,

and 3 days to comply with the order of November 4th and the decree of November 15th, and on failure to comply he was to be committed for contempt, until he has fully complied with said orders.

. Dickens was enjoined from disposing of his real estate January 28, 1909, and, on the same day, a motion was made that the defendant be adjudged guilty of contempt of court, first, "by violating the injunction heretofore issued against him, by taking the bonds which he purchased with the assets of the English Manufacturing Company, and removing them from the depository from which he was forbidden by the injunction of this honorable court from removing, and secreting them and appropriating them to his own use," and asking that he be committed until he restore the bonds and surrender them to the receiver. Another motion was made to commit said Dickens to jail for removing the bonds, and on February 1, 1909, a decree was rendered committing said Dickens for contempt, in violating the injunction issued November 8, 1907, by removing and converting to his own use the bonds, and ordering that he be committed to the custody of the sheriff until he deliver the bonds to the receiver, Wm. Vizard, "and the amount of money equal to the coupons which have been detached and disposed of before the issuance of this injunction, or until released by the further order of this court." On motion a further order was made committing him on account of certain other bonds, which had been omitted from the first order.

With regard to that part of the decree adjudging Dickens guilty of contempt, in reference to the bonds, it will be noticed that the injunction therein referred to was the one issued on November 8, 1908, which was, in fact, an order directing said Dickens to turn over to A. Inge Selden, the receiver theretofore appointed, the

property in question, and ordering him not to dispose of the same. Subsequently, and before the date of said decree of contempt, the court had reversed the decree appointing the receiver, holding that, as Dickens was shown to be entirely solvent, he as surviving partner, had a right to the possession of the assets of the late firm, and that it was not proper to appoint a receiver.— *Dickens v. Dickens*, 154 Ala. 440, 45 South. 630. The record shows that said bonds were, in fact, delivered to said Selden, receiver, in accordance with said decree; but, after the action of this court, the same were returned to said Dickens. There was no proof that said bonds had ever been re-deposited in the same safety depository as before.

It is difficult to see how Dickens could be adjudged guilty of contempt for disobeying an order, which the record shows that he obeyed. That order had not only become functus officio, by having been complied with, but also by the judgment of this court, under which the papers were properly returned to him. It is true that, subsequent to the decision of this court, another receiver, Vizard, was appointed; but no order had been made for him to deliver the bonds to Vizard, and the order states distinctly that he is committed for violating the injunction of November 8, 1907. It results that said order of February 1, 1909, was without authority of law; and it was, further, violative of the law, in that it committed him until he should pay the "amount of money equal to the coupons which have been detached and disposed of." The amount due for the coupons was simply a debt, and to imprison a man until he paid it would be simply imprisonment for debt, which is forbidden by our Constitution.—*Ex parte John Hardy*, 68 Ala. 303, 323.

While the decree of May 2d was not peremptory, as to the time within which the accounts should be separated, as therein required, yet that did not mean that the defendant was not to comply at all with the directions of the chancellor, and whenever an account was filed it was the duty of the defendant to make it out as therein directed. The subsequent decree of November 4th was peremptory, and after more than eight months, allowed as a reasonable time to comply with the decree of May 2d, the decree of January 28, 1909, fixed the time within which the decree of May 2d should be complied with, thus making it peremptory. Following the rules above stated, the chancellor has found the facts that said Dickens has not, in good faith, obeyed the orders of the court, but on the contrary, has filed a false and fraudulent account; and we must take his finding as being correct. Those being the facts, said Dickens was properly adjudged to be in contempt, and it was within the power and jurisdiction of the court to order that he be imprisoned until he should comply with the orders of the court.

A receiver having been appointed to take charge of the assets of the firm and estate being administered in the court, it was the duty of the court to make such orders and adopt such measures as were necessary to have the property placed in the hands of the receiver. The disobedience of this order is what is denominated a "civil contempt," and the concensus of authority is that the court, having made an order within its power and jurisdiction, has a right to commit the violator of it to prison until he complies with the order.—Rapalje on Contempts, p. 26, § 21; 7 Am. & Eng. Ency. Law (2d Ed.) 68; 9 Cyc. 60; *In re Allen,* 13 Blatchf. 272, 275, Fed. Cas. No. 208; *Ex parte Tinsley,* 37 Tex. Cr. R. 517, 40 S. W. 306, 66 Am. St. Rep. 818, 828; *Bessette v.*

*Conkey & Co.,* 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997; *Ex parte Crittenden,* 62 Cal. 534; *Ex parte Smith,* 53 Cal. 204.

Section 3057 of the Code of 1907 provides that: "The court of chancery may punish for contempts by fine, not exceeding fifty dollars, and by imprisonment, not exceeding five days, one or both." In the chapter (103) on "Judicial Power," etc., in section 4630, it is said: "The powers of the several courts, in this state, to issue attachments and inflict summary punishment for contempts, do not extend to any other cases than * * * (3) the disobedience or resistance of any officer of the court, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command thereof." And section 4631 provides that: "Every court has power * * * (3) to compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding therein." And section 4632 is: "For the effectual exercise of the powers conferred by the preceding section, the court may punish for contempts in the cases provided for in this chapter."

The question arises: Does the limitation in section 3057 apply to civil contempts in refusing or failing to obey the orders of the court? In holding that a similar statute did not apply to a civil contempt, the Supreme Court of Florida said: "It never could have been the design or intention of the Legislature to deprive the court of chancery of the only means which it possesses to enforce affirmatively its orders and decrees, or to enforce any decree, whether affirmative or otherwise, which may be passed upon the final hearing of the cause."—*Ex parte A. K. Edwards,* 11 Fla. 174, 187. To the same effects, see *Rebham v. Fuhrman* (Ky.) 50 S. W. 976; Rapalje on Contempts, p. 13, § 11. We hold

that said section does not limit the power of the chancery court in enforcing obedience to its decrees.

The writer confesses that, to him, the distinction between imprisoning a man for refusal to produce his property for the payment of a debt, and for refusing to deliver it to a receiver to be appropriated to the debts of his firm, if it proves ultimately to be so liable, is very narrow; yet this court held, in the *Hardy Case*, that the former was imprisonment for debt. And it seems also to be contrary to the spirit of our Constitution that a man should be imprisoned indefinitely, for a mere civil wrong; yet this inherent right of the chancery court seems to be sustained by the authorities.

It has been suggested that the refusal or failure to obey the orders of the court is continuing, and that, so long as the party continued to disobey, he might be re-imprisoned without limit, so that this is not imprisoning him for only the original offense. The fact that some of the states have specifically put a limit on this particular power suggests that it is a matter for legislative consideration. At any rate, we hold that, after the end sought has been accomplished by other means, the authority to continue imprisonment should cease; and if, in this case, by full access to the books, the state of the accounts has been satisfactorily ascertained, the defendant should be discharged.

With regard to the use of affidavits in the evidence as to the contempts, they seem to have been used by both parties without objection, and no advantage can be claimed on that account.

As to the refusal of the court to allow the defendant to be represented in the proceedings for stating the account against him, that pertains to the conduct of the main case, and will come up for review on final appeal in that case, if such is taken. It does not relate to the issue raised by the petition in this case.

[Jones v. Jones.]

The order of commitment of February 1, 1909, is quashed; but the order of January 28, 1909, being proper, the court denies the prayer of the petition to quash the same.

The costs of this proceeding will be divided in the proportion of two-thirds to the petitioner and one-third to the respondent.

 Petition granted in part, and in part denied.

DOWDELL, C. J., and DENSON and MAYFIELD, JJ., concur.