(130 So. 383)

## STAFFORD et al. v. COLONIAL MORTGAGE & BOND CO.

### 6 Div. 682.

Supreme Court of Alabama.

Oct. 23, 1930.

Charles W. Greer, of Birmingham, for appellants.

G. R. Hubbard, of Birmingham, for appellee.

**BOULDIN, J.**

The suit was by landlord against tenant to recover a monthly instalment of rent.

The defense was rescission of the rental contract for fraud in its procurement.

The cause was tried without a jury. The trial judge made a special finding of facts under Code 1923, § 9500.

 Appellee makes the point that such finding and judgment are not subject to review because the bill of exceptions shows no exception reserved thereto.

The case of Johnstone et al. v. O'Rear et al., 220 Ala. 219, 124 So. 743, relied upon on this point, has been overruled by the later case of Browne v. Giger, ante, p. 176, 128 So. 174.

Appellants, by written lease, rented an apartment from the appellee for six months, April 1 to September 30, 1927.

On the issue of fraud vel non the finding of facts was as follows:

"Prior to the entering into and the execution of the aforesaid lease by the defendants, the duly authorized agent of the plaintiff conducted the negotiations looking toward and having for their purpose the consummation and execution of the aforesaid lease, and at and during said negotiations, plaintiff's said agent knew of the fact that defendant's wife was then and would for several months to follow be in a pregnant condition. At and during said negotiations plaintiff's said agent as an inducement to the defendants to enter into said lease represented to the defendants that said apartment was constructed as and was as sound proof as the Dulion Apartments; said representations were material to the subject matter of the negotiations and the lease, and the defendants relied upon said representations in signing, executing and entering into said lease. The said apartment K-2 was not as sound proof as the Dulion Apartments; the Dulion Apartments were quiet and comfortable and in the Dulion Apartments, noises from flushing toilets, moving footsteps and scraping chairs in overhead apartments were seldom audible; in the apartment leased in the instant case, the footsteps of anyone walking across the floor in the apartment above could be plainly heard by those occupying apartment K-2; the water closet in the apartment above, apartment K-2 was so constructed and the walls surrounding said apartment were so constructed that every time the toilet in said upper apartment was flushed the noises consequent thereon could be plainly heard in apartment K-2; the said representations of the plaintiff's agent to the defendants was (were) false, but the Court makes no finding as to whether or not said representations were known by said agent to be false or recklessly made.

"The defendants took possession of apartment K-2 on April 1, 1927, and paid the April rent of $75.00 on April 1, 1927, and occupied the same as a residence continuously thereafter until May 17, 1927, on which last said date the defendants removed from and abandoned the possession of said apartment."

Finding the representations to be false and material, the court correctly held there was legal fraud without regard to any intent to deceive. Code 1923, § 8049; Cartwright v. Braly, 218 Ala. 49, 117 So. 477.

On the question of affirmance of the contract after knowledge of the fraud, and consequent waiver of the right to rescind, the finding of facts was as follows:

"The apartment just above apartment K-2, was not occupied at the time defendants went into the possession of apartment K-2, on April 1, 1927, but about two weeks later, on to-wit: April 15, 1927, other tenants of the plaintiff entered into the possession of the apartment just above apartment K-2, and continuously thereafter the noises from footsteps and flushing toilets as above set forth could be and were heard and known to the plaintiffs, and continuously after April 15, 1927, the defendants knew that apartment K-2 was not as sound proof as the Dulion Apartments.

"On April 30th, 1927, the defendant Al Stafford wrote and sent a letter to the plaintiff stating that they were in every way well pleased with Apartment K-2, except as to the noises continuously received from the apartment above apartment K-2. In that letter the

defendant, Al Stafford further said in said letter in speaking of said noises: 'It is not only bothersome in the evenings but particularly in the early morning hours. If we annoy the people above us I am not aware of it, but every time they walk across the floor we can hear them as distinctly as if they were in our own apartment. If it is possible for your firm to make this sound proof, or in any way curb to some extent the noise, I will immediately sign a lease for another year. As I said, we are more than pleased with our place in every other respect. Mrs. Stafford is nervous and will be more so within the next few months. Her doctor advises quiet, and the noise is becoming more and more objectionable; however if you will try and remedy it, even to a slight extent, I am ready to sign for our place for another year.'

"The plaintiff made no reply to said letter and took no action of any kind and said nothing in respect of the things mentioned in said last mentioned letter.

"No facts were shown other than those herein recited and found, that would show that Mr. and Mrs. Stafford could not have reasonably vacated said apartment K-2 during the last two weeks of April, 1927, had they desired to rescind the lease on account of the above set forth misrepresentation.

"On May 1st, 1927, the defendants with a knowledge that apartment K-2 was not as sound proof as the Dulion Apartments, paid the plaintiff the rent of $75.00 due for the month of May.

"Thereafter the defendants continued to occupy apartment K-2 until May 17, 1927, on which date, defendants abandoned said apartment K-2, and on said date, defendant Al Stafford wrote the plaintiff a letter in which he stated in substance that Mrs. Stafford was extremely nervous and was in the care of a physician, that her condition was a delicate one and required rest and sleep and that due to the noises in the apartment over them, she was unable to rest at any time, that he was leaving the apartment with 15 days rent paid in advance and that he was enclosing the keys to the apartment."

The conclusion of the court on this state of facts is thus stated:

"It is the opinion of the Court that though the defendants after a discovery of the misrepresentation as to the condition of the premises had a reasonable length of time in which to rescind the lease, that that right was waived and the lease affirmed by their payment of the May rent on May 1st, 1927, with a full knowledge on their part that the premises were not in the condition as represented.

"The payment of the rent by them on May 1, 1927, was a clear and positive affirmation of the contract; a treatment of the lease as of binding force and effect; and acquisition of a benefit namely, the clear right to occupy the premises throughout the month of May, 1927. It was a part performance of the contract after knowledge of the misrepresentation.

"True, on the day preceding the defendants has (had) complained of the condition of the premises, but there is nothing in defendants' letter of April 30, 1927, inconsistent with a claim on their part to the continued efficacy of the then existing lease. The letter of April 30th, contains no suggestion or intimation that defendants contemplated a rescission of said lease, nor does it contain anything inconsistent with a purpose on their part to claim the benefits of the said lease. To the contrary its unmistakable import is that the defendants were continuing a claim to the benefits of the then existing lease, as is indicated by their use of the expressions, 'our own apartment,' 'our place' and 'our place,' in their letter, and that the complaint as to the condition of the premises was not voiced in reference to the then existing lease or in reference to misrepresentations inducing said lease—but was in reference to the condition of the premises as affecting a possible future bargain—a lease for the next year."

In an opinion accompanying the finding of facts, the trial judge discusses the law of rescission for fraud. We quote the following from his opinion:

"But one, who after a discovery of the fraud by which he was induced to enter into a contract, treats the contract as in force and receives benefits therefrom cannot thereafter disaffirm it. Stephenson v. Allison, 123 Ala. 439, 26 So. 290.

"Also, a rescission predicated upon fraud or fraudulent misrepresentations must be asserted promptly upon discovery of the fraud or it cannot be made at all. Dean v. Oliver, 131 Ala. 634, 30 So. 865; Southern States Fire & Casualty Ins. Co. v. De Long, 178 Ala. 110, 59 So. 61; Birmingham R., L. & P. Co. v. Jordan, 170 Ala. 530, 54 So. 280.

"The right to disaffirm and rescind a contract will be lost either by affirming its existence or delaying a disaffirmation in order to gain some advantage thereby. Hunt v. Jones, 203 Ala. 541, 84 So. 718.

"The foregoing principles have been applied quite generally to leases. Thus it is held that 'a lessee * * * will generally lose his right to rescind for fraud if with knowledge of the facts he recognizes the binding force of the lease or takes any benefits under it. Thus the lessee may lose his right to rescind by remaining in possession of the premises with knowledge of the facts constituting the fraud.' 35 Corpus Juris 1174.

"And when a tenant with knowledge of the landlord's deception recognizes the binding

force of a lease, by the payment of rent, the tenant is precluded from afterwards rescinding the lease. Arcade Inv. Co. v. Hawley, 139 Minn. 27, 165 N. W. 477.

"And 'the payment of rent after full knowledge of the fraud, acts as a complete waiver of the right to rescind.' Hills v. Campbell, 87 Or. 690, 170 P. 298, 171 P. 565."

The case of McLeod v. McEachern, 187 Ala. 230, 65 So. 790, cited further on in said opinion, involved the right to rescind in part, and affirm in part; and the right to rescind a lease for fraud without surrendering possession held thereunder. It is not in point here.

We have set out thus fully the views of law and fact of the court below because they show his careful consideration of the case, and enable us to follow his thinking. The general principles stated in said opinion, and authorities there cited, are not to be questioned.

The real inquiry here is as to the right application of these principles to the facts of this case.

Manifestly the controlling facts, inducing the trial judge to hold the right of rescission was lost, consist in the letter of April 30th with payment of rent becoming due on the following day for the month of May.

■ Two principles of law in rescission cases are brought into view in the case. One is that, upon discovery of the fraud, the party must act seasonably. What is seasonable action depends somewhat on the nature of the case. Where the full nature and injurious effect of the fraud becomes apparent immediately upon discovery, the duty usually is to rescind promptly and put the other party in statu quo.

Rescission for breach of contract and rescission for fraud are governed by different rules.

■ Where contracts involve mutual continuing duties on the part of both parties, and one party has breached, but has not repudiated, the contract, it is the duty of the other before rescission to give notice and opportunity to live up to the contract. Ackley & Co. v. Hunter-Benn & Co.'s Co., 166 Ala. 295, 51 So. 964; Elliott v. Howison, 146 Ala. 568, 40 So. 1018.

■ This rule does not apply to the instant case as appellant insists. Still, since fraud may consist in misrepresentations innocently made, there can surely be no prejudice to the right of rescission, if the defrauded party does notify the other of the facts, and invite him to make good his representations, if the case is such that he may be able so to do. Such seems to be the suggestion of a spirit of fair-dealing and mutual understanding to be commended in business relations; a course tending to avoid needless controversy and litigation. In so far as the letter of April 30th looks to this result, it cannot be regarded as any waiver of the right of rescission. On the contrary, having called attention to the state of affairs, there was nothing amiss in waiting for a time to give opportunity to make things right.

■ Another principle is that an express affirmance of the contract by word or act, after full knowledge of the fraud, defeats the right of rescission. This, it appears quite clearly, is the ground upon which the trial court based his decision, and presents the most difficult question in the case.

■ It is manifest the materiality of these representations, the extent of the injury to result, turned on the effect of disturbing noises on the health of Mrs. Stafford in her then condition of advancing pregnancy. Her protection was the main fact in mind when the representations were made and acted upon.

■ The fraud, we think, was not fully discovered in this case, until the persistency and disturbing effect of these sounds upon her health became reasonably apparent. Mere annoyance might easily be endured or soon pass out of notice; but, if they proved hazardous to her, the event which gave the misrepresentations a grave import, the right of rescission should not be cut off, unless affirmance was made unconditionally and with full knowledge of such effect. Full knowledge of the fraud, or of facts which impose a duty of inquiry which would lead to knowledge, should appear before the party is made to suffer the consequences of a fraud.

In the letter of April 30th it was said: "Mrs. Stafford is nervous and will be more so within the next few months. Her doctor advises quiet, and the noise is becoming more and more objectionable."

Dr. Moore, the family physician, testified that during April he "advised Mr. Stafford to move his wife to a quieter place as the noises in the apartment, above mentioned, were so aggravating the physical condition of Mrs. Stafford as to render her condition critical."

Mr. Stafford says he did not vacate the apartment until the physician "advised her husband that should he continue to keep his wife in the apartment in question, that he would do so at the risk of jeopardizing her life." Nothing in the evidence contradicts these statements.

Although this evidence indicates the husband was warned by competent advice against remaining in the apartment prior to April 30th, we do not construe his words in the letter, nor his act in paying the rent then due as an unconditional affirmance of the contract; as showing a purpose to take chances on his wife's health at all events.

True, there is no expression of a purpose to rescind unless the conditions were remedied,

and true, further, that he offered to enter into a contract for another year as an inducement to that end. He shows full satisfaction with the department, with the exception of this noisy condition, but voices a decided objection to that. We think it too harsh a construction of his words and acts to say he renewed or affirmed the contract despite all contingencies touching the effect upon his wife's health.

In applying the doctrine of waiver of the right of rescission by the victim of fraud, the essential principles of justice and equity in the particular case should be kept ever in mind.

These, we think, are on the side of the defendants in this case.

The judgment of the court below is therefore reversed, and one here rendered for defendants.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.