139 So. 267

## MEREDITH v. DRENNEN MOTOR CAR CO.

### 6 Div. 908.

Supreme Court of Alabama.

Jan. 14, 1932.

Hartwell A. Greene, of Birmingham, for appellant.

Mullins, Pointer & Deramus, of Birmingham, for appellee.

**BOULDIN, J.**

The bill is to enjoin the negotiation of negotiable notes and to cancel the same for alleged fraud in their procurement.

As a general rule, a court of equity will, at the instance of the maker of negotiable paper to which he has a good defense against the payee, enjoin a transfer thereof which will result in cutting off such defense. McCormick v. Fallier, 223 Ala. 80, 134 So. 471, 32 C. J. 152, § 202.

The inquiry now before us is whether the bill states a case of fraud as a good defense to the notes in the hands of the payee. The bill and exhibits disclose that on November 10, 1930, complainant purchased from respondent a new automobile, a Buick coupé, trading in his used Buick car, making a cash payment, and executing a series of installment notes with lease-sale contract for the balance.

Complainant, buyer, being "dissatisfied" with the new car, some two days after the purchase returned it to the respondent, dealer, and by mutual consent the contract of purchase was rescinded, the cash payment returned, and notes surrendered. Complainant demanded the return of the automobile he had traded in. This was refused; the dealer claiming that it had already been sold. Thereupon, ten days after the original purchase, a second deal was concluded, wherein complainant purchased a secondhand Buick roadster. The original turned-in car was credited on the second purchase at a reduced price, and another series of notes and lease-sale contract executed for the balance.

It is then averred that this Buick roadster, the second purchase, was wholly unsatisfactory to complainant, and accepted solely because of the representation that the original turned-in automobile could not be returned, the same having been disposed of; that on the day following this second purchase it was discovered by complainant that such representation was false; that the original automobile was still on hand and being offered for sale; that thereupon demand was made for the same; that by agreement the second contract was canceled and the roadster returned.

But, in lieu of the second contract, and twelve days later, a third was consummated whereby complainant purchased the car originally traded in, made a cash payment thereon, and gave a third series of notes with lease-sale contract for the balance. Two of this series of notes were paid.

This bill, filed nearly four months after their execution, seeks to cancel the eight remaining notes outstanding.

After the above recital of facts, section 8 of the bill alleges: "That the second and third contracts (including notes hereinbefore referred to) were obtained by Respondent's fraudulent and false representations * * * that your Complainant's automobile (Motor #2111977) had been sold and was no longer in Respondent's possession when in fact it had not been sold and was then in Respondent's possession."

Section 9 reads: "That the third contract hereinbefore referred to was obtained by duress in that Respondent threatened your Complainant that if your Complainant did not sign said contract Respondent would refuse to surrender your Complainant's automobile and that your Complainant being in great, immediate need for said automobile for use in business your Complainant not having a legal remedy to secure immediate possession of said automobile was thereby forced to sign said contract."

It will be noted this is not a bill to rescind the last contract wherein complainant re-

purchased the car he had traded in on the first deal in the usual sense. There is no offer to return the car. The purpose is to keep the car as his own and cancel the notes given for it. Such relief can only rest upon the theory of a rescission of the original transaction and that all subsequent dealings should be wiped out as infected with fraud.

Disregarding mere terminology, and dealing with the facts disclosed, there was never a rescission in toto of the original contract revesting the title to the traded-in automobile in complainant, but a new deal whereby the new car first purchased was returned and a second car purchased; the traded-in car being applied as part payment on the second purchase.

The bill expressly shows the dealer refused to surrender the traded-in car, but gave a false reason or excuse for not so doing.

If the bill alleged facts showing good ground for rescission of the first contract in equity, and that respondent by fraud induced complainant to waive such right, then, if no later facts intervened to defeat it, complainant could still assert his equitable claim to a rescission.

There is no averment of fraud or other right of rescission of the original transaction by which respondent acquired this traded-in car and retained it until he finally sold it to complainant, the notes in suit being given for it.

The bill merely avers complainant was "dissatisfied" with the new coupé first purchased. There was no guaranty of satisfaction, but the contract then signed stipulated that the buyer had already tested and accepted the car. The bill, therefore, neither avers any actual rescission revesting title to the traded-in car in complainant nor equitable ground upon which a court of equity should rescind it.

Whatever fraud, therefore, may have entered into later transactions, any rescission must place matters in statu quo at the time such fraud intervened. Complainant cannot keep the fruits of the transaction and repudiate its burdens.

Aside from what has been written, and still assuming, but not deciding, that the false representation as to the inability to return the car induced the second deal, and the situation thus brought about led on to and infected the third transaction, notwithstanding complainant then knew all about such false or fraudulent statement, the bill shows a definite ratification of the last purchase by retaining the car and making payment as per contract.

■ Section 9 states no case of duress of goods as recognized in Glass & Co. v. Haygood, 133 Ala. 489, 31 So. 973, for the reason, among others, that the car was not complainant's property at the time of the last transaction.

A full answer to any theory of the case is in the fact, expressly averred, that, with full knowledge of the alleged fraud, complainant not only entered into the third transaction and gave these notes, but thereafter, when no stress of business could have entered into his action, he ratified the deal by retaining the car and paying some of the notes, a clear recognition of his obligation under the contract. Stafford v. Colonial Mortgage & Bond Co., 221 Ala. 636, 130 So. 383; Stephenson v. Allison, 123 Ala. 439, 26 So. 290.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.